## Aaron Capen *et al. versus* Edward Crehore *et al.*

The plaintiff A. and the defendant E. became jointly and equally interested in the purchase of large tracts of timber land in Maine, and A., being unable to pay his moiety of the purchase money, conveyed all his interest in the land to E., and E. subsequently gave him a bond with condition, that if A. should at any time within five years repay E. a moiety of all such moneys as E. should pay on account of the lands and on contracts for procuring timber therefrom, with interest, and " of all other expenses, disbursements, taxes, costs, charges and other payments whatsoever, which E. should pay for or in relation to all and every or any of the premises, including all reasonable charges of interest upon any such payments as he should make in relation thereto," and if A. should also give E. a bond, with sureties, to pay a moiety of the moneys then remaining to be paid, E. would then convey to A. a moiety of E.'s right, title and interest in the lands and in the contracts relating to them, and a moiety of the net proceeds of sales of the lands and timber. A. assigned this bond in trust for the payment of his debts and for the reconveyance to him of the surplus of the property which should remain in the assignees' hands. After the conveyance by A. to E., A. devoted his time and labor to the felling of timber from the lands. There was no direct evidence that E. had employed him as his agent for that purpose, but in E.'s answer to a bill in equity brought by A. and his assignees, to compel a specific performance of the bond, E. admitted that A. had rendered an account of his claim for services, and E averred that a sum less than the amount claimed would be a sufficient compensation for A.'s services. During the time that A. acted as such agent, he had scarcely any means of supporting himself and his family except what he derived from E. Upon such bill in equity it was *held*, that after A.'s conveyance to E., A. had no interest in the land, legal or equitable, and that E. was not a trustee of the lands for A.; wherefore A. was entitled to a reasonable compensation for his services.

*Held* also, that notwithstanding the assignment, A. was entitled to have such claim allowed, either for his own benefit or that of his creditors.

*Held* also, that A. ought to bear a moiety of any loss in the transactions, sustained by accident and without any want of care and caution on the part of E.; but that the loss of a large bank bill, remitted by E., in a letter sent by mail, from this State to a person in Maine, who declined to take the risk of that mode of remitting, must be borne wholly by E., as he had not exercised a proper degree of caution.

*Held* also, that E. was not entitled to compensation for his services in raising money and advancing his own funds to make the payments, he being the absolute owner of the property, and being under a mere personal obligation to convey to A., and there being in the bond no stipulation for such compensation.

*Held* also, that E. was not to be allowed interest beyond the legal rate, on his own funds advanced to make the payments, whatever might be the market rate for the loan of money at the time; but that if he was obliged to pay extra interest to raise money for that purpose, it ought to be allowed him, provided it was reasonable; if however he had used the proceeds of the lands for his private use, this should be taken into consideration.

This was a bill in equity to compel the specific performance of a contract between Aaron Capen and Edward Crehore. The suit was brought by Capen and two others, assignees of his property, against Edward Crehore, the Oriental Bank, and Isaac N. Crehore.

The bill alleges, that in 1832, certain persons gave bonds to Capen and E. Crehore to convey to them certain tracts of land in the State of Maine, upon the payment of the purchase money, which was to be paid by instalments within four years ; that Crehore made divers payments to the obligors in behalf of Capen ; that on the 22d of February, 1834, Capen conveyed to Crehore all his right, title and interest in the bonds and lands therein mentioned, and in divers contracts which had been made for cutting and obtaining lumber from the lands, and that thereupon Crehore executed and delivered to Capen a bond, dated on the same 22d of February, which is recited in full, and upon which this suit is founded.

The bond is under the penalty of $10,000. The condition recites, that Capen has made the conveyance to Crehore, and that Crehore has agreed with Capen, that if Capen shall, at any time within five years from the date of the bond, repay to Crehore one moiety of certain specified sums which Crehore has paid and is liable to pay, and shall before that time pay for the purchase of the lands, with interest thereon from the time of payment, and one moiety of all such moneys as

SUFFOLK.

Crehore shall pay before that time on account of contracts for procuring lumber and timber from the lands, which Crehore before that time may have entered into, and interest thereon from the time of payment, " and one moiety of all other expenses, disbursements, taxes, costs, charges, and other payments whatsoever, which the said Crehore before that time shall or may pay for or in relation to all and every or any of the premises, including all reasonable charges of interest upon any such payments as he shall make in relation thereto ; " and shall also give to Crehore his (Capen's) bond, with two sufficient sureties, conditioned to pay one moiety of the moneys then remaining to be paid for the purchase of the lands and upon contracts for procuring lumber and timber therefrom, and to exonerate Crehore from one moiety of all his liabilities incurred or to be incurred for the purchase money and contracts for obtaining the lumber and timber, that then and after the fulfilling of all and singular the premises by Capen, Crehore will convey to him one moiety of Crehore's right, title and interest in all the lands, and in the bonds for the conveyance of the same, and in the contracts for procuring timber and lumber therefrom, and one moiety of the net proceeds of sales of the lands and lumber and timber.

The bill then states that Capen assigned this bond to the two other plaintiffs in trust for the payment of his debts and for the reconveyance to him of the surplus of the property which should remain thereafter in their hands.

The bill charges, that Crehore has sold and conveyed all the lands at a great advance on the cost, and has received part of the purchase money in cash and taken the purchasers' notes for the residue, secured by mortgage of the lands and a lien on the timber and lumber to be cut thereon, and has received large sums of money, the proceeds of timber and lumber cut upon the lands ; and that he has transferred some of the notes and collateral security to I. N. Crehore and to the Oriental Bank, for his private debts.

The plaintiffs further allege, that E. Crehore is indebted to Capen for his services on the lands, according to an account rendered.

They also aver, that E. Crehore has received from Capen's

interest in the lands, an amount much larger than the sums which he was to be repaid under the bond signed by him ; and they tender performance of all things by them to be performed according to the terms of the bond.

The bill alleges that E. Crehore is insolvent, and prays that he may be required to account ; that he, and the Oriental bank, and I. N. Crehore, may be enjoined from assigning and collecting the amounts due on the notes of the purchasers of the lands and lumber, and discharging or parting with the mortgages and liens thereon ; that a receiver may be appointed ; and that the contract of the 22d of February, 1834, may be specifically performed.

In the answer of E. Crehore he admits the purchase of the lands by himself and Capen, the conveyance from Capen to the respondent, the respondent's bond to Capen, the sales of the lands and of some of the lumber by the respondent, the receipt of cash and notes from the purchasers, and that some of the notes and mortgages have been pledged to the Oriental bank as security for moneys lent to him by the bank at the time of giving the pledge ; he admits that Capen rendered an account and claim for services, as set forth in the bill, but denies that the claim, as to its amount, is a reasonable and proper one, and avers that a far less sum should be a full, fair and sufficient compensation for all the services of Capen ; and he states that he, the respondent, has had the general charge of the whole business, and that he is entitled to a larger sum for his services than is due to Capen for Capen's services ; he states that a large sum is due from Capen to the respondent and must be paid before any account can be required of him in the premises ; and he offers to convey to the plaintiffs all their right and interest in the premises, according to the bond, so soon as they shall repay to him one moiety of all the sums paid and advanced by him, and give him a bond of indemnity as provided in his bond. Various accounts are annexed to the answer.

On the filing of the bill a writ of injunction issued, as prayed for, to all the defendants, which, after the coming in of the answer of E. Crehore, they moved might be dissolved. But it appearing necessary to examine the accounts annexed to the

answer, it was agreed that the bill and the answer and the accounts thereto annexed, should be referred to a master for that purpose.

The master made a report, that nothing is to be paid by Capen or his assignees, to entitle them to receive of E. Crehore a reconveyance of the former interest of Capen in the lands and lumber or in the proceeds thereof, but that Crehore is indebted to Capen in the sum of $ 958, exclusive of the claim of Capen's assignees, for notes pledged by Crehore to the Oriental bank.

The master allows Capen for his services as the agent of E. Crehore, at the rate of $ 1200 a year, from February 27th, 1834, to November 30th, 1836. He states that the purchases of land made by Capen and Crehore in 1832, amounted to about $ 27,000, for which they gave their joint and several notes. At the time of the purchases, Capen lived in Dorchester, in this State. He had little or no property, but was a capable man of business, and well qualified to explore land and cut timber. Crehore was possessed of considerable property, and he advanced nearly all the cash payments which were made in the joint business. Capen was not able to furnish his part of the payments required, and on the 16th of May and 28th of August, 1833, he conveyed to Crehore his interest in the lands, in order to secure Crehore for his liability for Capen's part of the joint notes, as well as for Capen's part of advances and payments already made. On the 22d of February, 1834, Crehore executed the bond to reconvey to Capen, and immediately after appointed Capen his agent for the purpose of cutting and felling timber from the lands. Capen thereupon removed to the Kennebec river and was employed in the agency during the period above mentioned. He labored as regularly and constantly as the nature of his business admitted, and was a very diligent and efficient agent. During the period of his agency he was very poor and nearly destitute of the means of supporting himself and his family, except what he derived from Crehore. It was suggested by the defendants, that when Capen accepted the agency, he agreed to make no charge for his services ; and the correspondence between Capen and Crehore was offered in proof of this suggestion

The correspondence is silent on the subject of expected compensation, as well as on that of the gratuitous services of Capen. On the whole evidence the master was satisfied, that there had been no express agreement concerning Capen's services, and he allowed him a reasonable compensation.

The defendants charged as an item of disbursements, the sum of $ 500 lost in or stolen from the mail. Crehore was bound to pay that sum in Maine to one Pike, a contractor for cutting timber, and he sent it in a single bank note in a letter by mail. Before sending the money he inquired of Pike whether it should be sent by mail, and Pike expressly declined taking the risk of the mail conveyance. The money never came to the hands of Pike. The master disallowed this charge.

The defendants also claimed a commission for the services of Crehore and the time necessarily employed by him in selling land, lumber, &c. in order to cover the expenses incurred by him in raising money to pay the notes given by Capen and himself and to pay the various charges of conducting the lumber business, &c. It was proved, that during the period when Crehore was obliged to pay money on account of the lands, much more than the legal rate of interest was given in the Boston market, and during a part of that period his accounts showed that he was sometimes largely in advance, and at other times was in funds to considerable amounts from the sales of land and lumber. The master did not consider that Crehore was, by the terms of his bond, entitled to charge a commission, or more than legal interest ; and this claim was disallowed.

E. Crehore filed exceptions to the master's report : 1. Because the master allowed a large sum for the services of Capen rendered after the 22d of February, 1834 ; whereas there was no evidence exhibited of any actual retainer of Capen by Crehore to act as his agent, by any express agreement for that purpose, and no such claim for services ought to be allowed from the nature of the relation between Capen and Crehore respecting the subject matter to which they were both giving personal attention during the same period of time ; and Crehore further says, such claim exists, if at all, against him in-

Capen
*v.*
Crehore.

dividually, and cannot be considered in this account, where the assignees of Capen are the plaintiffs in interest.

2. Crehore objects, because the master has disallowed the sum of $ 500 charged by Crehore as so much money remitted to Pike by mail. And for cause of objection, he says that during the whole period embraced by the account, he lived in Dorchester, that the payment was to be made in or near Anson in Maine, at the distance of nearly three hundred miles from his place of residence, and that acting in good faith, he had a right to take the risk of remitting by mail, to avoid the expense of sending a messenger.

3. Crehore objects, because the master has disallowed all sums charged by Crehore under the name of commissions or a reasonable compensation to him for doing the business, and paying and receiving moneys under the contracts between him and Capen, and because the master has not allowed him any sum in the nature of reasonable charges by him and as expended by him for advances by him made and moneys by him hired to carry into effect the contracts between him and Capen, and to complete the purchases and carry on the business therein provided for. And for cause of objection he says, that by the terms of his bond to Capen, and by the nature and equities of the case, he was entitled, when called upon to reconvey and retransfer to Capen or his assigns the former interest and rights of Capen, to be reimbursed all reasonable sums by him paid for moneys borrowed, and to be allowed a reasonable compensation for all sums by him advanced out of his own funds, in order to carry on the business and affairs provided for in the bond.

*Jan.* 31*st,*
1840.

*H. H. Fuller* and *T. Russell,* for the defendants. The master erred in allowing Capen a compensation for his services. In the purchase and management of the lands Capen and Crehore were originally *quasi* partners. If Capen had not gone out of the partnership, he would not have been entitled to such an allowance, and having elected to come in again, he stands precisely as if he had never gone out ; and his services will be remunerated in the increased value of the lands. *Franklin* v. *Robinson,* 1 Johns. Ch. R. 157 ; *Bradford* v *Kimberly,* 3 Johns. Ch. R. 433.

<div style="float:right">Capen<br>*v.*<br>Crehore</div>

In sending $ 500 to Pike by the mail, Crehore adopted a usual mode of remitting money, and he was bound only to use ordinary diligence. Story on Agency, 172, 176, 190 ; 2 Story on Eq. 512, § 1269 ; Lewin on Trusts, 300, 322, 449, 450.

Crehore is entitled to an allowance of interest according to the current rate at the time when he was obliged to make payments for the lands ; and whether he paid extra interest in raising the money required, or made use of his own funds, the equity is the same. And if Capen's claim to compensation for his services is to be allowed, Crehore is entitled to a reasonable commission for his general care and management of the business. *Chambers* v. *Goldwin,* 5 Ves. 837 ; *S. C.* 9 Ves. 254 ; Lewin on Trusts, 441 ; *Brown* v. *Litton,* 1 P. Wms. 140 ; *Crawshay* v. *Collins,* 15 Ves. 225 ; *Miller* v. *Beverleys,* 4 Hen. & Munf. 415 ; *Granberry's Ex'or* v. *Granberry,* 1 Wash. 246 ; *Livingston* v. *Van Rensselaer,* 6 Wendell, 63 ; *Gibson* v. *Crehore,* 5 Pick. 161 ; *Bradford* v. *Kimberley,* 3 Johns. Ch. R. 433.

*Sprague* and *Gray, contrà,* cited on the first exception, *Rosevelt* v. *Bank of Niagara,* 1 Hopkins, 579 ; *Simpson* v. *Hart,* 1 Johns. Ch. R. 91 ; *S. C.* 14 Johns. R. 63 ; and on the third, *Eaton* v. *Simonds,* 14 Pick. 105.

<div style="float:right">*March term,*<br>1840.</div>

WILDE J. delivered the opinion of the Court. Several exceptions have been taken to the report of the master, upon the decision of which the principal matters in dispute between the parties will be determined, so that the case may be prepared for a final decree without any further reference.

The first objection to the master's report is, that there was allowed to Capen his claim for services, to a large amount, as the agent of Crehore, upon or about the lands or lumber mentioned in the bill, without sufficient evidence to prove that Crehore ever employed him, as his agent to perform such services.

It has been argued by the defendants' counsel, in support of this objection, that Capen and Crehore are to be considered in a court of equity as partners, in all matters and proceedings relating to the lands and the proceeds ; and that by law, neither partner can be allowed to charge the other for services

Capen
v.
Crehore.

rendered in taking care of or advancing the value of their join property, although their services may be unequal, unless there is some agreement to that effect between them. On the other hand, the counsel for the plaintiffs, without controverting the general principle of law as to partners, contended, in the first place, that Capen and Crehore, after the former had conveyed to the latter all his interest in the lands, and the proceeds therefrom, could in no sense be considered as partners. And if they could be, that there was sufficient evidence, as reported by the master, to authorize him to decide, as he had done, that Capen was appointed by Crehore his agent, to do and perform the services for which compensation had been allowed. And this answer to the objection appears to the Court entirely satisfactory. When the services were performed Capen had no interest in the land, either legal or equitable. The conveyance to Crehore was absolute, and the moiety conveyed was not held in trust for Capen, although it is averred in the bill, that it was so held. But this is denied in the answer, and there is nothing in the condition of the bond which can be so construed as to create a trust in favor of Capen. That was a mere personal obligation, and it was not certain that Capen ever would obtain any interest in the lands ; for the whole might be sold by Crehore, and in such case the plaintiff might be compelled to rely on his personal responsibility. We think, therefore, that Capen and Crehore, after the conveyance, had no joint interest in the lands, or the lumber taken therefrom, and cannot be considered as partners. And we are also of opinion, that the decision of the master is well supported by the evidence, even if the parties had been partners. In addition to the inference to be drawn from the correspondence between the parties, it was impliedly admitted in Crehore's answer, that Capen was employed as his agent. "He admits that Capen rendered an account of his claim for services, as set forth in the bill, but denies that the account and claim, as to its amount, is a reasonable and proper one, and avers that a far less sum should be a full, fair, and sufficient compensation for all the said Capen's services." And again, it was suggested by Crehore, at the hearing before the master, " that when said Capen accepted said agency he agreed to make no charge

for his services." But there was no evidence to support the suggestion, and the master came to the only conclusion that the evidence could justify, namely, that Capen was appointed by Crehore as his agent, but that there was no agreement between them as to the amount of the compensation he was to receive for his services. The objection to the allowance of this claim, on account of the assignment by Capen to the other plaintiffs, cannot prevail, because Capen is a party to the suit, and is entitled to have his claim allowed, either for his own benefit, or for the immediate benefit of his creditors, for the payment of whose claims against him the assignment was made. It is immaterial to the defendants how the appropriation is made, as an allowance in this suit will be a bar to any future action for the claim. It has not been contended, nor can it be maintained, that Capen is improperly joined as a party. He has a residuary interest in the property claimed, after the payment of his debts, and is the only party in whose right the specific performance of the contract can be decreed. He was, therefore, necessarily joined as one of the plaintiffs.

2. The second exception to the master's report is, that he disallowed a charge made by E. Crehore, for the loss of the sum of $ 500 sent by him in the mail to one Charles Pike, a contractor for cutting timber on the lands in question, and which never came to his hands.

It has been argued, that this remittance was made in good faith, and that Crehore is not chargeable with any want of ordinary care in remitting the money by mail ; that Crehore is to be considered as acting as trustee, and that if any part of a trust fund be lost, without any fault of the trustee, he using ordinary care, he is not responsible to the *cestui que trust* for the loss. And certainly such is the law in respect to trustees. By the law of England they are not entitled to any compensation for their services ; and it would be a hard law to hold them responsible for any loss, if they use ordinary care, or in other words, are not guilty of gross negligence. But Crehore, as has been already remarked, did not hold the lands conveyed to him by Capen in trust for him. The lands vested absolutely in Crehore, and were not incumbered with any trust, so that the relation of trustee and *cestui que trust* did not ex-

ist between them. Nor were they partners, nor was Crehore the agent of Capen. They were merely contracting parties, and the stipulations, obligations, and liabilities of each party are expressed in, or are derived from, the condition of the bond. Capen is entitled to a conveyance, if he does the several things therein required of him to be done. In order, therefore, to decide the question, whether Capen is obligated to pay any part of the loss of the $500, we must look into the condition of the bond, in which there is set forth with great particularity whatever he is bound to do and perform, to entitle himself to a conveyance. The only clause which can apply to the question under consideration, is the following. After specifying sundry payments to be made by Capen, the condition requires that he should also pay " one moiety of all such moneys as the said Crehore shall pay for or on account of all and every contract for procuring and obtaining lumber from the said lands, with interest thereon, from the time of payment ; and one moiety of all other expenses, disbursements, taxes, costs, charges, and other payments whatsoever, which the said Crehore shall or may pay for, or in relation to all and every or any of the premises, including all reasonable charges of interest upon any such payments as he shall make in relation thereto."

Although this clause does not, in express terms, require Capen to pay a moiety of any losses which Crehore should sustain in the prosecution of the business referred to in the condition of the bond, we nevertheless are of opinion, that any loss thus sustained by accident, or without any want of care and caution on the part of Crehore, is to be considered as included within the terms *expenses, disbursements, and charges.* But then we think there was great want of care in the remittance of the money, by mail. Such remittances are always hazardous ; and in the present instance the remittance by mail was unnecessary. If the money had been deposited in one of the Boston banks, it might have been passed to the depositor's credit in one of the banks in Hallowell, Augusta, or Waterville, and a check might have been forwarded payable to the order of Pike, the creditor, and in this manner the chance of loss might have been avoided. Or if the bank bill remitted had been cut into two parts, and one part had been remitted, and

the other retained until the receipt of the part remitted had been acknowledged, there can be no doubt that the remittance might have been safely made. This mode of remittance was not infrequently adopted in former times, when there was less facility of making remittances through the agency of banks. For these reasons, we think the master decided correctly in rejecting the charge of $ 500.

Thirdly, the defendants object to the decision of the master, rejecting Crehore's claim for compensation for his services in doing the business referred to in the bond. This charge was made, as the master reports, in the form of commissions, in order to cover the expenses incurred by Crehore in raising money to pay the notes given by him and Capen, and extra interest for large sums of money advanced by him out of his own funds, to carry on the business and concerns provided for in the bond, at times when much more than legal interest was given for the loan of money in the Boston market. By the clause in the bond already referred to, it appears clearly that the charge of commissions was not agreed to be allowed, nor any compensation for Crehore's services in transacting the business. And this seems to have been his understanding at the hearing before the master, for he claimed commissions only to cover expenses for raising money, and for advancing his own funds, &c. He did not prove that he had paid any extra interest in order to raise money. If he had, we think that ought to be allowed, provided it was reasonable ; but then if he had used funds, at other times, acquired from the property conveyed by Capen, for his own private or individual concerns, that also should be considered. But as to these matters, there was no sufficient evidence to authorize the master to make any allowance for extra interest. As to the advances made by Crehore from his own funds, he certainly cannot charge more than legal interest, whatever was the rate of interest in the market. On the whole, therefore, we are of opinion, that the master decided correctly on the evidence as reported, and the exceptions to his report are overruled.

*Exceptions overruled.*